UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

| | | |
|---|---|---|
| ERIC C. DETERS, | ) | |
| Plaintiff, | ) | Civil Action No. 3: 11-0026-DCR |
| V. | ) | |
| KENTUCKY BAR ASSOCIATION, et al., | ) | **MEMORANDUM OPINION** |
| Defendants. | ) | **AND ORDER** |

\*\*\* \*\*\* \*\*\* \*\*\*

Defendants Kentucky Bar Association ("KBA") and Linda Gosnell have filed a motion to dismiss Plaintiff Eric C. Deters' Complaint. [Record No. 7] The defendants argue that Deters' claims under 42 U.S.C. § 1983 are subject to dismissal on a number of grounds, including the *Rooker-Feldman* and *Younger* abstention doctrines. For the reasons discussed below, the defendants' motion will be granted.

## I. BACKGROUND

This lawsuit is the second filed by Deters in 2011 pertaining to Kentucky attorney-discipline rules. In his first action (*Deters I*), Deters sought a preliminary injunction staying the KBA's then-pending disciplinary proceedings against him on the ground that the trial commissioner appointed to preside over the proceedings, Frank Doheny, had improperly refused to recuse himself.[1] The Court denied the requested relief, finding that Deters' claims were barred

---

[1] Deters also asserted a First Amendment claim regarding Kentucky Supreme Court Rule (SCR) 3.130(8.2). His present complaint does not implicate Rule 8.2.

by the *Rooker-Feldman* doctrine, as well as the *Younger* abstention doctrine, and thus had no chance of success on their merits. *See Deters v. Davis*, No. 3: 11-cv-02-DCR, 2011 U.S. Dist. LEXIS 3836 (E.D. Ky., Jan. 14, 2011). Thereafter, Deters voluntarily dismissed the case, but was ultimately sanctioned under Rule 11 of the Federal Rules of Civil Procedure. *See Deters v. Davis*, No. 3:11-cv-02-DCR, 2011 U.S. Dist. LEXIS 63340 (E.D. Ky., June 13, 2011).

Four months after his first suit was dismissed, Deters filed the present action. The factual allegations contained in his second complaint are substantially similar to those set forth in *Deters I*. First, he describes alleged misconduct by Defendant Linda Gosnell in her capacity as KBA bar counsel. [Record No. 1, pp. 2-5 ¶¶ 7-15] According to Deters, Gosnell knowingly filed false charges against him. [*Id.*, p. 3 ¶ 12] In the course of his disciplinary proceedings, Deters filed a motion for Rule 11 sanctions against Gosnell and Deputy Bar Counsel Sarah Coker. [Record No. 1-6] Trial Commissioner Doheny denied that motion on the merits, finding no basis for such sanctions. [Record No. 7-4, p. 5]

The remaining allegations concern Deters' unsuccessful attempts to have Doheny removed from the proceedings. [*See* Record No. 1, pp. 5-13 ¶¶ 16-46] Deters sought Doheny's recusal as trial commissioner because Doheny was a member of the same law firm as Linda Ash, an attorney representing former clients of Deters' whose bar complaint formed the basis for one of the charges against him. [*Id.*, pp. 6-7, ¶ 19] The issue came to light during a June 2010 hearing. At that time, Deters repeatedly stated that he had no problem with the relationship. [*See* Record No. 1-9, pp. 25-26 (quoting hearing transcript)] Although he expressed concerns about the connection between Doheny and Ash in a letter to bar counsel Sarah Coker a few days

after the hearing, Deters did not take action until nearly five months later, when he filed a motion for recusal under a state statute pertaining to "[d]isqualification of [a] justice or judge of the Court of Justice." Ky. Rev. Stat. ("KRS") § 26A.015. [*See* Record No. 1-7, p. 4] That motion was denied, as Doheny found no basis for recusal and determined that Deters had waived the issue in any event. [*See* Record No. 1-9, p. 27] Deters then attempted to file an affidavit, pursuant to KRS 26A.020(1), questioning Doheny's ability to impartially decide the disciplinary charges against him. [Record No. 1-8] However, the affidavit was refused — first by the KBA disciplinary clerk, then by the clerk of the Kentucky Supreme Court, and finally by the Chief Justice of the Kentucky Supreme Court — as an improper filing. [*See* Record Nos. 1-13, 1-18]

Based on the facts outlined above, Deters asserts two claims under 42 U.S.C. § 1983. First, he questions the constitutionality of SCR 3.160(4), which affords absolute immunity to bar counsel for claims arising out of attorney disciplinary proceedings. [Record No. 1, pp. 13-14 ¶¶ 51-55] *See* Ky. Sup. Ct. R. 3.160(4). This count is premised on Deters' belief that "immunity must be provided for by the Constitution, legislative act or Court decision, not by Order" [*Id.*, p. 14 ¶ 52] and that the rule thus represents "an unconstitutional overextension of section 116" of the Kentucky Constitution. [*Id.* ¶ 53] He seeks "[a]n Order or Declaratory Judgment that Kentucky Bar Counsel and it[s] lawyers can't be granted absolute immunity by a Supreme Court Rule and clarification whether Bar Counsel can be held responsible under a Rule 11 motion." [*Id.*, p. 16]

Deters also alleges that the Supreme Court Rule governing recusal, SCR 3.240(2), violates his right to due process. He expressly states that this claim relates to the recusal rule "as applied in future cases." [*Id.*, pp. 15-16, ¶ 59] Deters asks the Court to issue

> [a]n Order or Declaratory Judgment that Kentucky Recusal Rules as they apply to a Trial Commissioner of a Tribunal Hearing are unconstitutional because they violate due process in that they do not give Plaintiff and others similarly situated with [sic] a fair hearing if a conflict or other basis for recusal arises at any time past the ten days after the Trial Commissioner's appointed [sic].

[*Id.*, p. 16]

## II. ANALYSIS

The defendants maintain that Deters' present claims, like those asserted in *Deters I*, are barred by the *Rooker-Feldman* doctrine. They further contend that the *Younger/Middlesex* abstention doctrine prevents the Court from hearing such claims. In addition, the defendants argue that Deters lacks standing and fails to state a claim upon which relief can be granted. Because the *Rooker-Feldman* issue is jurisdictional, the Court's analysis begins there.

### A. *Rooker-Feldman*

The *Rooker-Feldman* doctrine applies "when a plaintiff asserts before a federal district court that a state court judgment . . . was unconstitutional or in violation of federal law." *McCormick v. Braverman*, 451 F.3d 382, 395 (6th Cir. 2006). To determine whether a claim is barred by *Rooker-Feldman*, the Court must identify "the source of the injury the plaintiff alleges in the federal complaint. If the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine would prevent the court from asserting jurisdiction." *Id.* at 393. Put another

way, a federal constitutional challenge to a state court decision is "inextricably intertwined" with that decision, and thus barred under *Rooker-Feldman*,

> if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it. Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment.

*Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25 (1987) (Marshall, J., concurring); *see McCormick*, 451 F.3d at 394-95 ("[T]he phrase 'inextricably intertwined' . . . describes the conclusion that a claim asserts an injury whose source is the state court judgment, a claim that is thus barred by *Rooker-Feldman*.").

In *Deters I*, the "central claim" was that Doheny had improperly refused to recuse. 2011 U.S. Dist. LEXIS 3836, at *11. Essentially, Deters "ask[ed] the Court to sit as an appellate court and review an order entered in a state-court proceeding: Commissioner Doheny's order denying Deters' motion to recuse." *Id.* The Court therefore lacked jurisdiction over the claim pursuant to *Rooker-Feldman*. *See id.* at *17. Here, Deters has taken pains to avoid framing his claim as an attack on Doheny's decision not to recuse. He relies heavily upon another case involving an attorney's constitutional challenge to state recusal rules, *Fieger v. Ferry*, 471 F.3d 637 (6th Cir. 2006). In *Fieger*, the plaintiff had an ongoing dispute with four members of the Michigan Supreme Court. *See id.* at 639. After unsuccessfully seeking the justices' recusal in two cases involving his clients, Fieger filed a federal lawsuit on his own behalf, seeking a declaratory judgment that the justices had violated his constitutional rights "by expressing public, personal, political, and professional animus toward him, by refusing to recuse themselves from cases in

which he was involved, and by actively pursuing disciplinary proceedings against him before the Attorney Grievance Commission." *Id.* at 640 (internal quotation marks omitted). In addition, Fieger asked the federal district court to find the Michigan recusal rule, as well as the state supreme court's interpretation of it, unconstitutional. *Id.* at 640-41.

The district court concluded that Fieger's claims were barred by the *Rooker-Feldman* doctrine and dismissed the case. *Id.* at 641. On appeal, the Sixth Circuit reversed in part, holding that *Rooker-Feldman* did not apply insofar as "Fieger challenge[d] the constitutionality of Michigan's recusal rules by alleging that '[t]he threat that the Plaintiff cannot, and will not, receive a fair hearing before an impartial and independent tribunal is real, immediate, and continuing.'" *Id.* at 646. "To that extent," the court explained, "the source of Fieger's alleged injury is not the past state court judgments," but rather "the purported unconstitutionality of Michigan's recusal rule as applied in future cases." *Id.* Because "[s]uch a claim is independent of the past state court judgments," it would not be barred under *Rooker-Feldman*. *Id.*

Borrowing language from *Fieger*, Deters alleges the same "real, immediate and continuing" threat. [Record No. 1, p. 15 ¶ 58] He points to "the 'war' [he] is having with Bar Counsel and the enemies . . . who have proven to file countless Bar Complaints against" him, as well as pending bar complaints and an additional bar charge, as proof that he is certain to face further disciplinary proceedings. [*Id.*, p. 16 ¶ 60] If a conflict with the trial commissioner were to arise in a future proceeding, Deters alleges, he would have "no recourse" under the Supreme Court Rules. [*Id.* ¶ 61] Because Deters challenges the recusal rule as it pertains to likely future disciplinary proceedings against him – as opposed to its application in past proceedings – this

claim is not barred by the *Rooker-Feldman* doctrine. *Cf. Fieger*, 471 F.3d at 646. Likewise, to the extent Deters' claim concerning bar counsel immunity relates not to the denial of his motion for Rule 11 sanctions but instead to bar counsel's immunity for actions that may be taken in future proceedings, the source of his injury is not a state-court decision, and *Rooker-Feldman* is inapplicable. *See id.*

### B. Standing

While *Fieger* is helpful to Deters for *Rooker-Feldman* purposes, it is less so with respect to standing. As the Sixth Circuit explained in *Fieger*, a plaintiff must make a three-part showing to establish standing: first, that he "has suffered an injury in fact that is (a) concrete and particularized and (b) actual and imminent, not conjectural or hypothetical"; second, that "the injury is fairly traceable to the challenged action of the defendant"; and third, that "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." 471 F.3d at 643 (internal quotation marks omitted). The *Fieger* panel further noted that "[i]n the context of a declaratory judgment action, allegations of past injury alone are not sufficient to confer standing." *Id.* Instead, "the plaintiff must allege and/or demonstrate actual present harm or a significant possibility of future harm." *Id.* (internal quotation marks omitted).

In *Fieger*, the plaintiff had alleged a threat that was "real, immediate, and continuing." *Id.* Based on his extensive litigation history before the Michigan Supreme Court, the Sixth Circuit found it "reasonable to conclude that there is a significant, rather than a remote, possibility that Fieger's present and future cases will someday reach the Michigan Supreme Court," *id.* at 643, and that it was "likely, rather than speculative, that Fieger will again face the

recusal issue that he has faced in past cases." *Id.* at 643-44. Accordingly, the court concluded that Fieger had standing to pursue his claims. *Id.* at 644.

Here, by contrast, Deters has not established that he is likely to face a similar recusal issue in the future. Whereas Fieger's claims involved four justices of the state supreme court, Deters' claim relates to one of a pool of possible trial commissioners, and the alleged basis for recusal is specific to Doheny. *See* Ky. Sup. Ct. R. 3.230 (providing for appointment of "the next available member of the Trial Commission to serve as a commissioner" in a disciplinary proceeding). Although he has demonstrated that he may be involved in further disciplinary proceedings, Deters does not allege that any trial commissioner appointed to preside over future proceedings is likely to have a conflict that would lead him to seek recusal. [*See* Record No. 1, pp. 15 ¶ 58 ("At the next tribunal of Plaintiff, *if* a conflict arises during the tribunal, Plaintiff will be without recourse." (emphasis added)), 16 ¶ 61 ("[*I*]*f* a conflict with a Trial Commissioner would arise in a future tribunal, Plaintiff has no recourse." (emphasis added)).

Deters' claim suffers from another fatal flaw — namely, he cannot show that if a conflict were to emerge during future proceedings, he would have "no recourse," as he repeatedly alleges. [*Id.*, p. 16 ¶¶ 61, 63; *see id.*, p. 15 ¶ 58] Rule 3.240 provides:

> At any time, not later than ten (10) days after the appointment of a Trial Commissioner *or at such point in the proceeding that facts become known sufficient for such challenge*, the Respondent may, by motion, challenge for cause the Trial Commissioner. If the challenge is such as might disqualify a Circuit Judge, the Chief Justice shall relieve the challenged member and direct the Disciplinary Clerk to immediately fill the vacancy.

Ky. Sup. Ct. R. 3.240(2) (emphasis added). Despite having quoted this rule in his Complaint, Deters finds its only significance to be that it "recognizes there could be bias and the importance

to provide a lawyer the right to object to the appointment." [Record No. 1, p. 6 ¶ 17] Deters' incomplete reading of Rule 3.240(2) is further illustrated by his prayer for relief, which requests a declaratory judgment that the rule is unconstitutional because it does not provide "a fair hearing if a conflict or other basis for recusal arises at any time past the ten days after the Trial Commissioner's appointed [sic]." [*Id.*, p. 16] This assertion is clearly contradicted by the text of the rule itself, *see* Ky. Sup. Ct. R. 3.240(2), and Deters offers no reason why the rule's provisions would be inadequate in such a situation.[2]

In short, Deters has not established a likelihood that "a conflict or other basis for recusal" will surface in his future disciplinary proceedings, much less that it would be impossible for him to utilize Rule 3.240(2) to seek recusal at *any* point during those proceedings. [*Id.*] In other words, he cannot show "a significant possibility of future harm." *Fieger*, 471 F.3d at 643. Therefore, Deters does not have standing to challenge the rule's constitutionality.

With respect to bar counsel immunity, Deters fares somewhat better. He alleges that, in addition to the six charges originally at issue, there are several other bar complaints against him that are currently "being prosecuted by Kentucky Bar Counsel, including one which is a charge." [Record No. 1, p. 13 ¶ 48] Furthermore, the Complaint describes a pattern of misconduct by Gosnell that entails pursuing meritless charges against Deters. [*See id.*, pp. 2-4 ¶¶ 7-14] Based on those allegations — which, for purposes of a motion to dismiss, the Court must take as true

---

2  The only indication that Deters might be aware of his missed opportunity under Rule 3.240(2) is paragraph 24 of the Complaint, which states: "Plaintiff, at the time of the revelation [of the relationship between Doheny and Ash], did not have time to think about his options." [Record No. 1, p. 8 ¶ 24] It should go without saying that Deters' alleged time shortage does not provide a basis for a constitutional challenge to the rule setting out the appropriate method for seeking recusal.

— Deters has shown "a significant possibility of future harm." *Fieger*, 471 F.3d at 643. Thus, he has standing to pursue Count I of his Complaint.

### C. *Younger/Middlesex* Abstention

As the Court explained in *Deters I*, "*Younger* abstention prevents federal courts from hearing civil rights tort claims brought by a person who is currently being prosecuted for a matter arising from that claim in state court," and the Supreme Court has found *Younger* applicable in the context of attorney disciplinary proceedings. 2011 U.S. Dist. LEXIS 3836, at *23-24 (citing *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982)). The *Middlesex* Court applied a three-part inquiry in determining whether *Younger* abstention is appropriate: "first, do state bar disciplinary hearings within the constitutionally prescribed jurisdiction of the State Supreme Court constitute an ongoing state judicial proceeding; second, do the proceedings implicate important state interests; and third, is there an adequate opportunity in the state proceedings to raise constitutional challenges[?]" 457 U.S. at 432. With respect to the third prong, "[t]he burden . . . rests on the federal plaintiff to show 'that state procedural law barred presentation of [his] claims." *Pennzoil*, 481 U.S. at 14 (quoting *Moore v. Sims*, 442 U.S. 415, 432 (1979)). The court should abstain "unless state law clearly bars the interposition of the constitutional claims." *Moore*, 442 U.S. at 426.

Deters does not dispute "that a bar disciplinary proceeding constitutes a 'judicial' proceeding" or that such proceedings implicate important state interests. [Record No. 11, p. 10] However, he argues that *Younger* is inapplicable because he seeks only declaratory relief and has

no adequate opportunity to raise constitutional issues in the bar proceedings. [*See id.*, pp. 9-12] Both contentions are meritless.

First, as the defendants point out, the law is clear that *Younger* applies to claims for declaratory judgments as well as injunctions. The Sixth Circuit has expressly stated that a "federal plaintiff does not have to seek injunctive relief against an ongoing state proceeding for a federal court to abstain. *Younger* abstention also applies in federal declaratory judgment actions because they involve 'precisely the same interference with and disruption of state proceedings' as an injunction." *Carroll v. City of Mount Clemens*, 139 F.3d 1072, 1074 (6th Cir. 1998) (quoting *Samuels v. Mackell*, 401 U.S. 66, 72 (1971)). Here, Deters' claim is based on the "pending . . . bar complaints being prosecuted by Kentucky Bar Counsel, including one which is a charge." [Record No. 1, p. 13 ¶ 48] In other words, it relates to disciplinary proceedings that are already under way. For the Court to entertain Deters' claim for declaratory relief would "interfere[] with and disrupt[]" those proceedings. *Carroll*, 139 F.3d at 1074. The first prong of the *Middlesex* test is therefore satisfied.

Moreover, Deters has not met his burden to show that he is precluded from raising the constitutionality of bar counsel immunity in state court. As the Court observed in *Deters I*, "there is no indication that either the state disciplinary committee or the Kentucky Supreme Court would have refused to consider a constitutional challenge to one of the rules." 2011 U.S. Dist. LEXIS 3836, at *31. Nothing that Deters has alleged in the present case suggests otherwise. Thus, all three prongs of the *Middlesex* test are met, and *Younger* abstention is appropriate.

The Court notes in closing that even if Deters' Complaint could somehow survive the defendants' threshold challenges, it nevertheless fails to state a claim upon which relief can be granted. Both counts are premised on § 1983, yet in Count I, Deters does not identify any constitutional right allegedly violated by the rule granting bar counsel immunity; instead, the claim rests on an alleged violation of the Kentucky Constitution. [*See* Record No. 1, p. 14 ¶ 53] Deters has no remedy under § 1983, because "[t]he first inquiry in every section 1983 case is whether there has been the deprivation of a right secured by the Constitution or laws of the United States." *Williams v. Bass*, 63 F.3d 483, 485 (6th Cir. 1995) (citing *Baker v. McCollan*, 443 U.S. 137, 140 (1979)). And as explained in section II.B above, Deters' due process challenge to the recusal rule is defeated by the text of the rule itself.

### III. CONCLUSION

Deters lacks standing to attack the constitutionality of the Kentucky rule governing recusal, and the Court must abstain from hearing his remaining claim. Accordingly, it is hereby

**ORDERED** that Defendants' Motion to Dismiss [Record No. 7] is **GRANTED**. This action is **DISMISSED**, without prejudice, and stricken from the Court's docket.

This 21st day of November, 2011.



Signed By:
*Danny C. Reeves* DCR
United States District Judge